Eleanor E. Whitehead v. Commissioner.
Whitehead v. Commissioner
Docket No. 3262.
United States Tax Court
1944 Tax Ct. Memo LEXIS 157; 3 T.C.M. (CCH) 771; T.C.M. (RIA) 44252; July 31, 1944
*157 John F. Greaney, Esq., and Frank J. Albus, Esq., for the petitioner. E. M. Woolf, Esq., for the respondent. STERNHAGEN In determining a deficiency of $11,463.46 in petitioner's individual income tax for 1941 the Commissioner included in her income $22,233.33 as her distributive share as a beneficiary of the W. G. Kable Estate, and petitioner contests $18,233.33 of this inclusion. Findings of Fact The petitioner is a resident of Richmond, Virginia. She was the wife of William G. Kable prior to his death on July 5, 1920. Kable was the owner of all the outstanding shares of Staunton Military Academy, Inc., a Virginia corporation, and bequeathed them in trust for the benefit of petitioner and their three children. The net income was payable to petitioner for life, except that as each child became 21 years of age one-ninth of the net income was payable to him or her and the distributive share of petitioner was correspondingly reduced. Petitioner remarried. The three children, William G. Kable, II, Eleanor Kable Miller and Helene Kable Ferguson, were in 1936 all over 21 years of age. The petitioner has been a trustee of the testamentary trust and a director of the Academy corporation *158 for many years. In 1936, after an investigation, her son informed her that William C. Rowland, a trustee of the testamentary trust and a director of the Academy, had breached his trust and that suit should be instituted against him. Petitioner refused to participate in any such suit. She informed her son that she would take nothing from such a suit and tried to dissuade him from pursuing the matter any further. The son requested his sister Eleanor to join him as petitioner in the suit. She agreed but refused to be responsible for any expenses. On January 4, 1937, a petition was filed in the Corporation Court of the City of Staunton by William G. Kable, II, and Eleanor Kable Miller against Rowland to remove him as a trustee under the will of William G. Kable, deceased, and for an accounting. Thereafter, and on June 8, 1937, at a meeting of the Board of Directors of the Academy, at which the petitioner was present, the following resolution was unanimously adopted: "WHEREAS, Wm. H. Kable and Mrs. Eleanor Kable Miller, two of the beneficiaries of the stock of this corporation held by the testamentary Trustees of Wm. G. Kable, deceased, have filed their petition in the chancery cause *159 of Wm. G. Kable's Exors. v. Wm. G. Kable's Trustees which is now pending in the Corporation Court for the City of Staunton, Virginia, seeking the removal of Wm. C. Rowland from his position as testamentary Trustee, and requiring him to account for the profits derived from his dealings and the dealings of Wm. C. Rowland, Inc., with Staunton Military Academy during the time the said Wm. C. Rowland has been testamentary Trustee and a Director of this Corporation; and, "WHEREAS, certain relief sought in said petition was for and on behalf of and for the use and benefit of this Corporation which at the time of the filing of said petition was unable by reason of the then composition of its Board of Directors to institute, or have instituted, any proceedings in its own behalf to recover the profits allegedly wrongfully derived by the said Wm. C. Rowland and the said Wm. C. Rowland, Inc., from their dealings with it; and "WHEREAS, the present Board of Directors of this Corporation feel that it is to the best interest of the Corporation that a judicial determination of the matters set forth in said petition be had and that this Corporation obtain such relief as it may be entitled to. *160 "NOW, THEREFORE, BE IT RESOLVED: That the Staunton Military Academy, Inc., do proceed by appropriate action to intervene in said cause and adopt the petition filed by the said Wm. H. Kable and the said Eleanor Kable Miller, and that the Business Manager be and he is hereby directed to employ counsel and to do whatever in his opinion may be necessary to carry out the object and purpose of this resolution." On June 30, 1937, the Academy filed its petition and became a party in the proceedings against Rowland. On August 23, 1938, a decree of the court ordered the removal of Rowland as trustee and required him to account to the Academy for the profits derived by him from his transactions with the Academy between July 5, 1920, and May 26, 1933. On appeal by Rowland to the Supreme Court of Appeals of Virginia, final judgment was awarded against him for more than $100,000 in favor of the Academy. Under compromise settlement after July 17, 1940, the Academy received "at least" $27,350 and bonds. At a regular meeting of the directors of the Academy held on August 14, 1940, at which petitioner was present, the following resolution was adopted, and petitioner voted in favor thereof: "Resolved, *161 that the entire net proceeds of the recovery in favor of this school from William C. Rowland be distributed by W. H. Steele, the Treasurer, as a special dividend to the beneficiaries and for distribution and division among them in accordance with any written agreement which they have made among themselves and which written agreement is to be deposited with the Treasurer and filed in the records of his office." At the same meeting, William G. Kable, II, exhibited to the board an agreement in writing dated July 17, 1940, between himself and the other beneficiaries of the testamentary trust, as follows: "Whereas judgment has been obtained by Staunton Military Academy against William C. Rowland in the Corporation Court for the City of Staunton for a sum in excess of $100,000; and, "Whereas the undersigned parties have reason to believe that a certain compromise offer will be made concerning a settlement of said judgment; "And whereas difference of opinion exists among the undersigned as to the advisability of accepting such offer, if made, "Now therefore, in order to obtain the unanimous consent of all of the undersigned parties who are the beneficiaries under the will of William *162 G. Kable, deceased, and as such entitled to all the dividends declared by Staunton Military Academy, do agree as follows: "That the Board of Directors of Staunton Military Academy be requested by the undersigned beneficiaries to declare a dividend equal to 50% of such compromise settlement, after the payment of attorney's fees, the entire amount of which dividend shall be paid to William G. Kable, II; and the undersigned beneficiaries do by these presents direct the said Staunton Military Academy to make payment of said dividend as above directed, and to further waive any and all rights that they might otherwise have in said dividend. "The residue of said settlement after payment of the amounts hereinbefore described, shall be held by Staunton Military Academy, and at their request be paid by said Academy to Eleanor Kable Miller, Helene Kable Ferguson and Eleanor E. Whitehead, in such amounts, and upon such terms and conditions, as they may agree upon. "It is further agreed among the parties, in consideration of the unanimous consent of the parties to the said compromise offer with William C. Rowland, that the entire recovery, if any, adjudged in favor of the petitioner against *163 Gilpin Willson, upon a petition now pending in the Corporation Court for the City of Staunton against said Willson, shall be the property of the said petitioner William G. Kable, II, and the undersigned beneficiaries other than the said William G. Kable, waive any and all interest that they, or any of them might have in any recovery that might be made from the said Gilpin Willson. "Witness the following signatures and seals this 17th day of July, 1940. "Helene K. Ferguson Eleanor Kable Miller Eleanor E. Whitehead W. G. Kable II" Under date of August 19, 1940, petitioner addressed to the treasurer of the Academy the following letter: "I am requesting you to distribute any money collected by you as Treasurer of Staunton Military Academy; and, collectible in accordance with the compromise agreement between Staunton Military Academy and William C. Rowland; as follows. - "After deducting attorney fees and commissions (1/2) one half of balance to be paid to W. G. Kable II; (1/4) one quarter to Helene Kable Ferguson; (1/4) one quarter to Eleanor Kable Miller." This letter was written by petitioner at the request of the treasurer and president of the Academy as authority for the *164 distribution of the net proceeds of the compromise directly to petitioners' children and to protect their interests. All of the net proceeds received by the Academy were distributed by check of the Academy 50 per cent to William G. Kable, II, 25 per cent to Eleanor and 25 per cent to Helene, and were reported as income by them. Memorandum Opinion STERNHAGEN, Judge: The Commissioner in the notice of deficiency adjusted petitioner's net income by adding "increase in fiduciary income $22,233.33" with the following explanation - Your distributive share of income from W. G. Kable Estate is $39,566.67 instead of $17,333.34 reported as dividends, an increase of $22,233.33. It is held that the dividends amounting to $27,350.00 paid in 1940 and 1941 by the Staunton Military Academy, Inc., constitute income of the W. G. Kable Estate for the fiscal year ended June 30, 1941, and distributable to the beneficiaries as provided in the will of William G. Kable, deceased. The figures are not in dispute; indeed, except as shown in the notice of deficiency, they are not in evidence. The only question in issue is whether the taxpayer's gross income properly includes her share, as beneficiary, of *165 two-thirds ($18,233.33) of the income ($27,350.00) of the testamentary trust created by the will of her deceased husband. The taxpayer contends that she relinquished any share of the amount recovered by the Academy corporation in the suit against Rowland, and that since, pursuant to her relinquishment, the amount in question was not received by her but was distributed by the corporation directly to the other beneficiaries, it is not within her gross income and she may not be taxed upon it. We are of opinion that the Commissioner's determination must be sustained. The petitioner has, since her first husband's death in 1920, been a beneficiary of the testamentary trust, and in 1941 her interest was in six-ninths of the income of the trust. The corpus of the trust consisted of the shares of the Academy corporation, all of the income of which was regularly distributable by the trustees to the beneficiaries. The income was therefore in the statutory class of Section 161(a)(2), Internal Revenue Code, and, as provided by Section 162(b), was deductible by the trustee and included within the net income of the beneficiaries, whether distributed or not. The petitioner was not a shareholder *166 of the corporation, and, in law, she had no direct interest in the income or receipts of the corporation. The judgment of the Virginia Corporation Court was not a judgment for the testamentary trustees but a judgment in favor of the corporation, and, other than the equitable interest of a shareholder before dividend declared, the trustees had no direct interest in the judgment. This legal situation was recognized when the Academy corporation became a party to the suit and prayed an accounting and recovery of profits. Therefore, when the taxpayer in 1936 refused to join with her son in the suit for the removal of Rowland as trustee, and for an accounting, she was not renouncing any right as beneficiary to distributions from the testamentary trust, even though she was stating her disapproval of the suit. However, when on June 8, 1937, the directors of the corporation voted to join the suit as party plaintiff so that wrongful profits of Rowland might be recovered, the taxpayer was present and the resolution was unanimously adopted. As a director of the corporation, she also voted for the resolution of August 14, 1940, that the proceeds of the recovery be distributed as a special dividend. *167 She relies on the qualification in that resolution that the distribution be made to the beneficiaries of the trust in accordance with a written agreement among them. Such an agreement had been made by the beneficiaries on July 17, 1940, to the effect that by a first dividend the net of 50 per cent of the settlement of the judgment should be distributed to William G. Kable, II, and that the rest should be held by the Academy for the other three beneficiaries of the trust. Thereafter the taxpayer, on August 19, 1940, by a letter to the Treasurer of the Academy, directed distribution 50 per cent to the son and 25 per cent to each of the daughters. The result of this was that when the corporation received proceeds of the judgment, it declared a dividend, which, instead of being paid to its shareholder, the trust, was, because of the agreement of the individual beneficiaries of the trust (to which no one objected), routed directly past the trust to the beneficiaries. As a matter of law, however, the dividend must be treated as declared by the corporation to its shareholder and as received by the shareholder constructively notwithstanding that actually the dividend was, by agreement, distributed *168 to the beneficiaries of the trust. The amounts must be regarded as coming to the individuals from the trust, to which alone their right to receive it was attributable, and not from the corporation, with which they held no direct legal relation. While there is no doubt that the parties to the arrangement, acting in concert, were free to dispense with the legal formalities called for by the existence of the corporation and of the trust, the Commissioner in administering the tax law, is not bound to adopt the short cut method which they have adopted. The Government has a right to impose the tax in accordance with the legal effect of what was done, and is not bound to disregard the legal forms and postulates because the taxpayer for his convenience has chosen to do so. Cf. Higgins v. Smith, 308 U.S. 473; National Investors Corp. v. Hoey, 144 Fed. (2d) 466. The taxpayer, by virtue of the terms of the will, had the right as beneficiary to demand the distribution of six-ninths of the income of the trust; and the trustees, being the shareholder, had the right, - indeed, were under the duty, - to demand the dividend declared *169 by the corporation, which in turn was distributable to the beneficiaries. Of course, the taxpayer also had the right to dispose of this distributive income as she liked, whether by gift or otherwise; but for income tax purposes she could not avoid the tax by giving away the income or making an agreement assigning it. Such an anticipatory assignment of income to be surely received by a beneficiary will not serve to relieve such beneficiary of the tax, for she is to be regarded either as constructively receiving it (Harrison v. Schaffner, 312 U.S. 579) or as realizing it through the enjoyment of transferring it ( Helvering v. Horst, 311 U.S. 112; Corliss v. Bowers, 281 U.S. 376. The fact that by the agreement of July, after the judgment, the petitioner purported to bring about a reapportionment of the trust income and directed the corporation to distribute the dividend in accordance with such agreed apportionment does not change the basis of the conception that as beneficiary of the trust she received the six-ninths of the trust income to which she was entitled and voluntarily disposed of it. *170 Thereby she did not exclude it from her gross income. The case of Commissioner v. Giannini, 129 Fed. (2d) 638, is relied upon by the taxpayer, but we think that the situation is quite different. The taxpayer, an officer of a corporation, refused to receive an unexpected bonus as soon as he learned its amount. Thus it remained the property of the corporation and was never his, and it was held that it was not in his gross income. The present taxpayer, however, could not renounce any part of her share of the trust income without changing her position as beneficiary of the trust. This, she did not do. Maintaining her position as beneficiary of six-ninths of the trust income she directed the distribution of her part of the particular income attributable to the judgment and dividend to other beneficiaries. This was a disposition by her, and not a renunciation which would, as in the Giannini case, have deprived her of any right to receive it or dispose of it. Decision will be entered for the respondent.